UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PORTAGE THEATER LLC<br><br>Plaintiff,<br><br>v.<br><br>GENERAL STAR INDEMNITY COMPANY,<br><br>General Stars. | Case No. 1:22cv04844<br><br>Judge Gary Feinerman |

**PORTAGE THEATER LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO GENERAL STAR INDEMNITY COMPANY'S COUNTERCLAIM**

Portage Theater L.L.C. ("Portage Theater") responds to the affirmative defenses and counterclaim of General Star Indemnity Company ("General Star") as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 based on diversity of citizenship between counter-plaintiff and counter-defendant.

**RESPONSE**: Admitted.

2. The matter in controversy in this cause exceeds $75,000.

**RESPONSE**: Admitted.

3. Venue is proper in this matter because certain events giving rise to this matter occurred in this judicial district and General Stars are subject to the personal jurisdiction of this Court. 28 U.S.C.A. § 1391.

**RESPONSE**: Admitted.

**THE PARTIES**

4. General Star is an insurance company organized under the laws of the state of

Delaware with its principal place of business in the state of Connecticut. Therefore, General Star is a citizen and resident of Delaware and Connecticut.

**RESPONSE**: Admitted.

5. Portage Theater is an Illinois limited liability company and a citizen and resident of Illinois. The sole member and manager of Portage Theater LLC is Manuel Gliksberg, who is a citizen and resident of Illinois.

**RESPONSE**: Admitted.

**THE GENERAL STAR POLICY**

6. In June of 2020, Portage Theater L.L.C. submitted an Accord application to General Star. The Application was executed by Manuel Gliksberg on June 11, 2020. By the Application, Portage Theater sought Property coverage for Building #1 in the amount of $2,100,000, with a Replacement Cost Valuation, and subject to 80% Coinsurance and a $5,000 deductible. Portage Theater sought Property coverage for Building #2 in the amount of $175,000, with a Replacement Cost Valuation, and subject to 80% Coinsurance and a $5,000 deductible. A true and accurate copy of the Policy Application form and TRIA disclosure are attached hereto as **Group Exhibit A.**

**RESPONSE**: Portage Theater admits that Group Exhibit A is a true and accurate copy of the Policy Application and TRIA disclosure. Portage Theater further admits that Manuel Gliksberg or someone acting on his behalf signed the Application on or about June 11, 2020. Theater denies the remaining allegations of paragraph 6.

7. Portage Theater accepted General Star's quotation, and General Star's managing general agent, USG Insurance Services, Inc, issued an Insurance Binder, evidencing the requested coverage. A true and accurate copy of the Insurance Binder is attached hereto as **Exhibit B.**

**RESPONSE**: Portage Theater lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 7 and therefore denies same. Portage

Theater denies the remaining allegations of paragraph 7.

8. General Star issued Policy No. IMA379181 to Portage Theater L.L.C. for the policy period of June 11, 2020 to June 11, 2021 ("General Star Policy"). The General Star Policy provides Commercial Property Coverage in the amount of $2,100,000 for the Building located at 4050 North Milwaukee Avenue, Chicago, IL, and $175,000 for the Building located at 4054 North Milwaukee Ave., Chicago, Illinois, subject to an 80% coinsurance requirement. The Coverage is provided at a Replacement Cost Valuation. A true and accurate copy of the General Star Policy was attached to General Star's Notice of Removal at Docket Entry 1-1.

**RESPONSE**: Portage Theater admits the allegations in the first and last sentences of paragraph 8. Portage Theater denies the allegations in paragraph 8 that are inconsistent with the terms, conditions, provisions, or exclusions contained in the Policy. Portage Theater denies the remaining allegations of paragraph 8.

**WIND DAMAGE CLAIM**

9. On August 14, 2020, by its agent, Portage Theater reported a first party property claim to General Star. Portage Theater reported that on August 10, 2020, the theater building suffered damage from a derecho storm, which would require replacement of the roof.

**RESPONSE:** Portage Theater admits the allegations in the first sentence of paragraph 9 and denies the remaining allegations in paragraph 9.

10. General Star retained an independent third party adjuster. The adjuster determined that the Portage Theater was underinsured. The adjuster utilized the Marshall-Swift Segregated Cost Form to determine that the replacement cost value of the building was calculated at $4,856.266.41, and the actual cash value of the building was calculated $3,399,386.49.

**RESPONSE:** Portage Theater lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 10 and therefore denies the same. Portage

Theater admits that an adjuster notified Portage Theater that the property was underinsured but disagrees with the adjuster's conclusion and therefore denies same. Portage Theater denies the remaining allegations in paragraph 10.

11. Portage Theater provided the independent adjuster with a repair estimate from Tilden Roofing for $134,500.00, which was accepted by General Star as a reasonable amount for repair. After subtraction of depreciation, the actual cash value loss for the roofing repair was $120,878.17.

**RESPONSE**: Denied.

12. By the terms of the General Star Policy, and based upon the calculated values and the General Star Policy valuation provisions, General Star determined that Portage Theater could recover only 54.055% of the replacement cost loss, or 77.22% of the actual cash value. Although the Policy provided Portage Theater with replacement cost coverage, the actual cash value calculation resulted in the highest payment to the Insured.

**RESPONSE**: Denied.

13. At the time of the valuation, neither General Star nor the independent adjuster was aware of the ornate details of the interior, the fact that the property contained a concrete roof deck, or that, in the event of loss, Portage Theater would replace the original interior plaster. After inclusion of these features, the Marshall-Swift Segregated Cost Form computed the replacement cost value of the property at $7,389.752.11, and the actual cash value at $5,172,826.48 This reduces Portage Theater's potential recovery for covered damages to 35.52% of a replacement cost, and 50.75% of an actual cash value loss.

**RESPONSE:** Portage Theater lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 13 and therefore denies same. Portage Theater denies the remaining allegations in paragraph 13.

14. In October of 2020, General Star, through the independent adjuster, offered to pay the higher

actual cash value of less, less the coinsurance penalty and $5,000 deductible, for a total of $88, 256.19. Portage Theater never responded.

**RESPONSE:** Denied.

15. In December of 2020, having received no response from Portage Theater, General Star issued payment to Portage Theater in the amount of $88,256.19.

**RESPONSE:** Portage Theater admits that General Star remitted $88,256.19 to Portage Theater in December of 2020. Portage Theater denies the remaining allegations of paragraph 15.

16. Portage Theater did not complete the roofing repairs until January of 2022, for the total cost of $134,800.

**RESPONSE:** Denied.

**WATER DAMAGE CLAIM**

17. On December 4, 2020, by Portage Theater's agent, General Star received notice of a claim for water damage to the interior of the Portage Theater. On the notice form, the date of loss was identified as December 4, 2020.

**RESPONSE:** Denied.

18. Subsequently, Portage Theater advised that the claim was for water damage that it contended has occurred since the August 10, 2020 derecho storm.

**RESPONSE**: Denied.

19. After the initial storm on August 10, 2020, Portage Theater took no steps to protect the property. As a result, water and snow continued to enter through the exposed roof deck and caused damage to the ceiling and walls of the theater and lobby. The water infiltration occurred until on or after July 26, 2021, the date on which Portage Theater contends it first began repairs to the roof.

**RESPONSE**: Denied.

20. On March 23, 2021, General Star declined coverage for the water damage claim.

**RESPONSE**: Portage Theater admits that General Star has declined coverage under the Policy for the full extent of the damage to the Portage Theater property as a result of the derecho storm on August 10, 2020. Portage Theater denies the remaining allegations in paragraph 20.

21. General Star contends that it has no further obligation to Portage Theater LLC with respect to the wind damage or water damage claims by reason of its prior payment, and the terms, conditions, exclusions and other provisions contained in the General Star Policy. Portage Theater L.L.C. asserts that General Star has additional obligations with respect to these claims. As a result, a present justiciable controversy exists regarding General Star's rights and obligations, if any, with regard to these claims.

**RESPONSE:** Portage Theater admits it is General Star's position that General Star has no further obligation to remit payment to Portage Theater with respect to the damage stemming from the August 10, 2020, derecho. Portage Theater admits that General Star has additional obligations to Portage Theater with respect to Portage Theater's claim under the Policy and further admits that there is an actual controversy between the parties but denies that General Star is entitled to the relief it seeks. Portage Theater denies the remaining allegations in paragraph 21.

## COUNT I

### Declaratory Judgment – Wind Damage Claim

22. General Star adopts and incorporates by reference paragraphs 1-21 as though fully set forth herein as this paragraph 22.

**RESPONSE:** Portage Theater incorporates and realleges its responses to paragraphs 1 through 21 as its response to paragraph 22.

23. The General Star Policy provides Replacement Cost coverage, subject to an 80% coinsurance requirement.

**RESPONSE:** Denied.

24. The General Star Policy contains the following pertinent provisions regarding Loss

Valuation, Payment and Coinsurance:

**E. Loss Conditions**

***

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild, or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supercedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

***

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value at the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

***

**F. Additional Conditions**

***

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiple the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

***

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

***

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

***

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)** subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

***

**RESPONSE:** Portage Theater admits that in paragraph 24 General Star quoted certain language from the Policy. Portage Theater denies that the Policy language quoted by General Star in paragraph 24 is dispositive of this matter. Portage Theater denies the remaining allegations in paragraph 24.

25. Pursuant to these provisions, General Star is not obligated to pay the full amount of any loss if the value of the property at the time of the loss, multiplied by the Coinsurance percentage, is greater than the limit of insurance. In such circumstances, General Star will multiply the value of the property by the Coinsurance percentage, divide by the limit of insurance by that number, then multiply the resulting figure by the amount of the loss.

**RESPONSE**: Denied.

26. At the time of the loss, the limit of insurance for Building #1 was $2,100,000. The replacement value of the property was $7,389.752.11, and the actual cash value at $5,172,826.48. The value of Plaintiff's property greatly exceeded the building limit of insurance contained in the General Star Policy and did not meet the 80% coinsurance requirement. Accordingly, by reason of the Coinsurance provision, Portage Theater's potential recovery for covered damages was 35.52% of the replacement cost, or 50.75% of an actual cash value loss.

**RESPONSE**: Denied.

27. At the time of the loss, Portage Theater presented General Star with a repair estimate for $134,500.00, to which General Star agreed. The actual cash value of the loss, after depreciation, was $120,878.17.

**RESPONSE:** Portage Theater lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 27 and therefore denies same. Portage Theater

further denies the remaining allegations of paragraph 27.

28. General Star, being unaware of the true features of the property, paid $88,256.19 for the roof repairs. General Star therefore met, and in fact, exceeded any obligation owed to Plaintiff for the wind damage claim, as its payments exceeded 50.75% of the actual cash value of the loss.

**RESPONSE:** Denied.

## COUNT II

### (Exclusion 2.m) – Water Damage Claim )

29. General Star adopts and incorporates by reference paragraphs 1-28 as though fully set forth herein as this paragraph 29.

**RESPONSE:** Portage Theater incorporates and realleges its responses to paragraphs 1 through 28 as its response to paragraph 29.

30. The Causes of Loss- Special Form of the General Star Policy contains Exclusion 2.m which provides that General Star will not pay for loss or damage caused by or resulting from:

> m. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**RESPONSE:** Portage Theater admits that in paragraph 30 General Star quoted certain language from the Policy. Portage Theater denies that the Policy language quoted by General Star in paragraph 30 is dispositive of this matter. Portage Theater denies the remaining allegations of paragraph 30.

31. After the derecho storm on August 10, 2020 which caused wind damage to the Portage Theater roof, Portage Theater took no steps to protect the property. As a result, water and snow continued to enter through the exposed roof deck and caused damage to the ceiling and walls of the theater and lobby during the period of August 10, 2020 until on or after July 26, 2021.

**RESPONSE:** Denied.

32. Exclusion 2.m therefore applies to preclude coverage for Portage Theater's water damage claim, and General Star has no obligation to indemnify or otherwise provide coverage to Portage Theater for this claim.

**RESPONSE:** Denied.

**COUNT III**

**(Exclusion 2.f – Water Damage Claim )**

33. General Star adopts and incorporates by reference paragraphs 1-32 as though fully set forth herein as this paragraph 33.

**RESPONSE:** Portage Theater incorporates and realleges its responses to paragraphs 1 through 32 as its response to paragraph 33.

34. The Causes of Loss- Special Form of the General Star Policy contains Exclusion 2.f, which provides that General Star will not pay for loss or damage caused by or resulting from:

> f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**RESPONSE:** Portage Theater admits that in paragraph 34 General Star quoted certain language from the Policy. Portage Theater denies that the Policy language quoted by General Star in paragraph 34 is dispositive of this matter. Portage Theater denies the remaining allegations of paragraph 34.

35. After the derecho storm on August 10, 2020 which caused wind damage to the Portage Theater roof, water and snow continued to enter through the exposed roof deck and caused damage to the ceiling and walls of the theater and lobby during the period of August 10, 2020 until on or after July 26, 2021.

**RESPONSE:** Denied.

36. Exclusion 2.f therefore applies to preclude coverage for Portage Theater's water damage claim, and General Star has no obligation to indemnify or otherwise provide coverage to Portage

Theater for this claim.

**RESPONSE:** Denied.

**COUNT IV**

**(Duty to Protect Property – Water Damage Claim)**

37. General Star adopts and incorporates by reference paragraphs 1-36 as though fully set forth herein as this paragraph 37.

**RESPONSE:** Portage Theater incorporates and realleges its responses to paragraphs 1 through 36 as its response to paragraph 37.

38. The General Star Policy contains the following conditions:

> **E. Loss Conditions**
>
> ***
>
> **3. Duties In The Event Of Loss or Damage**
>
> **a.** You must see that the following are done in the event of loss or damage to Covered Property:
>
> ***
>
> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside in the best possible order for examination.

**RESPONSE:** Portage Theater admits that in paragraph 38 General Star quoted certain language from the Policy. Portage Theater denies that the Policy language quoted by General Star in paragraph 38 is dispositive of this matter. Portage Theater denies the remaining allegations of paragraph 38.

39. After the derecho storm on August 10, 2020 which caused wind damage to the Portage Theater roof, Portage Theater took no steps to protect the property. As a result, water and snow

continued to enter through the exposed roof deck and caused damage to the ceiling and walls of the theater and lobby during the period of August 10, 2020 until on or after July 26, 2021.

**RESPONSE:** Denied.

40. Plaintiff is therefore precluded from recovery for any water damage to the interior of the Portage Theater, by reason of its failure to take reasonable steps to protect the property from further damage.

**RESPONSE:** Denied.

**COUNT V**

**(Declaratory Judgment- Water Damage Claim)**

41. General Star adopts and incorporates by reference paragraphs 1-40 as though fully set forth herein as this paragraph 41.

**RESPONSE:** Portage Theater incorporates and realleges its responses to paragraphs 1 through 40 as its response to paragraph 41.

42. The General Star Policy provides Replacement Cost coverage, subject to an 80% coinsurance requirement.

**RESPONSE:** Denied.

43. The General Star Policy contains the following pertinent provisions regarding Loss Valuation, Payment, and Coinsurance:

**E. Loss Conditions**

***

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild, or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supercedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

***

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value at the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

***

**F. Additional Conditions**

***

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure

determined in Step **(1)**;

**(3)** Multiple the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

***

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

***

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

***

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)** subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

***

**RESPONSE:** Portage Theater admits that in paragraph 43 General Star quoted certain language from the Policy. Portage Theater denies that the Policy language quoted by General Star in paragraph 43 is dispositive of this matter. Portage Theater denies the remaining allegations of paragraph 43.

44. Pursuant to these provisions, General Star is not obligated to pay the full amount of any loss if the value of the property at the time of the loss, multiplied by the Coinsurance percentage, is greater than the limit of insurance. In such circumstances, General Star will multiply the value of the property by the Coinsurance percentage, divide by the limit of insurance by that number, then multiply the resulting figure by the amount of the loss.

**RESPONSE:** Denied.

45. At the time of the loss, the limit of insurance for Building #1 was $2,100,000. The replacement value of the property was $7,389.752.11, and the actual cash value was $5,172,826.48. The value of Plaintiff's property greatly exceeded the building limit of insurance contained in the General Star Policy, and did not meet the 80% coinsurance requirement. Accordingly, even assuming the water damage claim were otherwise covered and not excluded, Portage Theater's potential recovery for covered damages was and is limited to 35.52% of the replacement cost, and 50.75% of an actual cash value loss.

**RESPONSE:** Denied.

## PORTAGE THEATER'S AFFIRMATIVE DEFENSES

Plaintiff Portage Theater, LLC sets forth the following affirmative defenses to the Counterclaim of defendant General Star Indemnity Company (the "Counterclaim"). By including any matter in these affirmative defenses, Portage Theater does not intend to, and does not, assume the burden of coming forward on or proving any such matter upon which under applicable law General Star bears the burden

of coming forward or the burden of proof. Portage Theater reserves the right to assert additional affirmative defenses at a later date.

## GENERAL ALLEGATIONS

1. Portage Theater incorporates by reference as though fully restated herein the allegations set forth in its Complaint.

2. This action arises out of Defendant General Star's erroneous contention that the coinsurance clause in the General Star policy for Portage Theater's properties at 4050 and 4054 N. Milwaukee Avenue, Chicago, (the "Property") is valid and properly limited Portage Theater's recovery of claims under the insurance policy.

3. Portage Theater, LLC ("Portage Theater") is a business entity that purchased the Property.

4. Portage Theater sought insurance to protect its investments in the Property. To that end, General Star drafted and ultimately issued to Portage Theater a Commercial Lines Policy Agreement for the period June 11, 2020, through June 11, 2021, Policy Number IMA379181 (the "Policy").

5. The Policy included a Commercial Property Coverage Part Declarations. The Optional Coverages section of the Declarations lists coverage for Location ##1 and 2 and Building #1 in the amount of $2,275,000.

6. The Optional Coverages section of the Policy states that for any Optional Coverages to apply, it must be "shown as applicable" in the Declarations.

> G. Optional Coverages
>
> If shown as applicable in the Declarations, the following Optional Coverages apply separate to each item.
>
> 1. Agreed Value
>
> a. The additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss or damage to the property than the proportional that the Limit of Insurance under this Coverage Part for the property bears to

the Agreed Value shown for it in the Declarations.

7. If shown as applicable in the Declarations, "Agreed Value" is one of the Optional Coverages available to Portage Theater under the Policy.

8. General Star expressly included, and Portage Theater accepted, the Agreed Value of $2,275,000 for the "Building" under Optional Coverages on the Declarations.

9. On August 10, 2020, during a powerful derecho, the Property's roof was torn off and its gutters severely damaged.

10. After the roof blew off, torrential rains immediately followed thereafter exposing the plaster in the ceiling to over 0.4 inches of rainfall, causing significant interior damage to the Property.

11. After the storm, Portage Theater's contractor, James Doherty ("Mr. Doherty") of Bayit Builders LLC ("Bayit Builders"), obtained a 50' x 50' tarp and fastened it to the gutter ties with bungee cords in a reasonable effort to cover the exposed area.

12. Portage Theater subsequently filed an insurance claim with General Star under the Policy.

13. Portage Theater's claim was processed with two claim numbers for the same derecho event – one for the roof damage and the second for the interior damage (the "Claim").

14. The Claim totaled $1,189,928.56, which represents the full estimated amount necessary to repair the damage to the Property as a result of the August 10, 2020, derecho.

15. Instead of remitting the full payment to Portage Theater for its Claim under the Agreed Value provision of the Policy, General Star has and continues to disregard its contractual obligation by wrongfully contending that a coinsurance penalty limits Portage Theater's recovery under the Policy and falsely alleging that Portage Theater failed to mitigate its damages as a result of the August 10, 2020, derecho.

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

General Star fails to state a claim for which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(The Optional Coverages Provision Bars Counts I and V of General Star's Counterclaims)**

The Building and Personal Property Coverage Form, G. Optional Coverages, contains the following provisions, conditions and limitations, in relevant part:

> **G. Optional Coverages**
>
> If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:
>
> **1. Agreed Value**
>
> **a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that properly than the proportion that the Limit of Insurance under this Coverage Part for the property bears to this Agreed Value shown for it in the Declaration.
>
> ***

The Optional Coverages sections of the Declarations list coverage for Location ##1 and 2 and Building #1 in the amount of $2,275,000.00. Accordingly, the Agreed Value is triggered by the listing of a limit of insurance in that section of the Declarations Page.

Portage Theater reserves its right to assert further and additional affirmative defenses and policy defenses based upon information that may be provided in discovery or other investigation in the course of this litigation.

WHEREFORE, Plaintiff Portage Theater LLC requests the Court enter judgment in its favor and against General Star and for such other and further relief as is appropriate.

Respectfully submitted,

/s/ ***Robin L. Letchinger***
One of the Attorneys for Portage Theater

Robin L. Letchinger (ARDC #6204937)
Pantelis G. Danos (ARDC #6331309)
Croke Fairchild Duarte & Beres
180 N. LaSalle Street
Suite 2750
Chicago, Illinois 60601
(312) 505-1424
rletchinger@crokefairchild.com
pdanos@crokefairchild.com

*Counsel for Portage Theater*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2022, I served a true and correct copy of the foregoing PORTAGE THEATER'S ANSWER AND AFFIRMATIVE DEFENSES TO GENERAL STAR'S COUNTERCLAIM upon the following through CM/ECF and to:

Michelle M. Bracke
Lewis Brisbois Bisgaard & Smith LLP
550 W. Adams, Suite 300
Chicago, Illinois 60661
Michelle.bracke@lewisbrisbois.com
312.345.3318

/s/ ***Robin L. Letchinger***