**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PORTAGE THEATER, L.L.C., | |
| Plaintiff, | |
| v. | Case No.: 1:22cv04844 |
| GENERAL STAR INDEMNITY COMPANY, | Judge Mary Rowland |
| Defendant. | |

**DEFENDANT'S MOTION TO COMPEL DISCOVERY**

NOW COMES Defendant/Counter-Plaintiff, General Star Indemnity Company ("General Star") by and through its attorneys and pursuant to Fed.Rule Civ.P. 37, and hereby moves for an order compelling Plaintiff/Counter-Defendant Portage Theater to produce all documents responsive to General Star's discovery requests. In support of its motion, General Star states as follows:

## I. FACTUAL BACKGROUND

1. This matter is an insurance coverage dispute, arising from alleged wind and water damage to property owned by Plaintiff, Portage Theater.

2. General Star issued a Commercial Property Policy to Portage Theater, L.L.C., which provided replacement cost coverage, subject to an 80% coinsurance requirement.

3. In September of 2022, Portage Theater filed the present lawsuit against General Star, asserting causes of action for declaratory relief, and breach of contact. D.E. 1-2.

4. In its Complaint, Portage Theater alleges that on August 10, 2020, a windstorm or derecho occurred, tearing off the roof of the property, and damaging its gutters. D.E.1-2, ¶5.

Portage further alleges that after the roof blew off, torrential rains followed and exposed the plaster in the ceiling to rainfall, causing significant interior damage to the property. D.E.1-2, ¶6.

5. In Count I, Portage Theater asserts a claim for declaratory relief, seeking a declaration that the General Star Policy issued to Portage Theater was an agreed value policy, and not a replacement cost policy.

6. In Count II, Portage Theater alleges that General Star breached the insurance contract, by declining to pay all of the amounts claimed by Portage.

7. On September 15, 2022, General Star filed its Answer, Affirmative Defenses and a Counterclaim (D.E. 7), by which General Star denies Portage Theater's allegations and seeks a declaratory judgment that it has no further obligations to Portage Theater with respect to its claim, by reason of several policy provisions and exclusions.

8. In Counts I and V of its Counterclaim, General Star asserts that Portage Theater greatly underinsured the property, resulting in a violation of the 80% coinsurance requirement.

9. In Count II, General Star asserts that Portage Theater took no steps to protect its property after the roof deck was exposed, thereby negating coverage pursuant to Exclusion 2.m, which provides that General Star will not pay for loss or damage caused by or resulting from neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss. In Count IV, General Star asserts that Portage Theater violated Section E. Loss Conditions, which required Portage Theater to take all reasonable steps to protect the Covered Property from further damage.

10. In Count III, General Star asserts that the claim is excluded by Exclusion 2.f, which precludes coverage for loss or damage caused by or resulting from continuous or repeated

seepage or leakage of water, or the presence of condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

11. On November 7, 2022, General Star served its First Set of Interrogatories upon Portage Theater. Also on November 7, 2022, General Star served its First Set of Requests for Production of Documents upon Portage Theater. A true and accurate copy of General Star's discovery is attached hereto as **Exhibit A.**

12. In response to General Star's Interrogatories, Portage Theater agreed to produce documents. *See* Portage's Reponses to General Star's Interrogatories, attached hereto as **Exhibit B.** Similarly, for its Response to General Star's Documents request, Portage Theater agreed to produce non-privileged documents relevant to certain of the Requests. *See* Portage's Responses to General Stars Requests for Production, attached hereto as **Exhibit C.**

13. Portage Theater produced 384 documents, none of which were identified as corresponding to any of General Star's discovery requests. Additionally, certain of the documents were blacked out in whole or in part, but Portage Theater provided no basis for the redaction or privilege log[1].

14. Additionally, for certain of General Star's Requests, Portage Theater either refused to produce any documents, or sought to limit its production. Specifically, Portage Theater has refused to produce any documents in response to Requests no. 9, 10, 12 and 14, and has unilaterally limited its production with respect to Requests no. 4,6, 7 and 8.

15. General Star therefore brings the present motion, seeking to compel production of the documents.

---

[1] The parties conferred and Portage Theater agreed to supplement its production and provide a privilege log; however, as of the date of this motion, Portage Theater has not yet provided the supplemental production and privilege log.

## II. ARGUMENT IN SUPPORT OF MOTION TO COMPEL

16. The discovery standard set forth in Rule 26(b)(1) allows discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed.R.Civ.26. *see also, e.g., Eternity Mart Inc. v. Nature's Sources, L.L.C.*, no. 19-cv-02436, 2019 U.S.Dist. LEXIS 198880, *4 (N.D.Ill. Nov. 15, 2019). If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is improper. *Id.*

**Requests for Production 4, 10, 12, and 14**

17. General Star seeks to compel production of the documents requested in its Requests for Production 4, 10, 12 and 14, as these requests seek relevant evidence regarding the condition of the property both before and after the Derecho.

18. Portage Theater claims that after the Derecho storm blew off its roof in August of 2020, the interior of the theater suffered water damage. The Derecho occurred in August of 2020, but Portage Theater did not begin any repairs to the roof until July 26, 2021 and did not complete the repairs until January of 2022. *See* **Exhibit B,** para. 12.

19. By its subpoena to the City of Chicago and through other means, General Star learned that beginning prior to the Derecho, Portage Theater was cited multiple times for failing "to maintain the exterior walls of a building or structure free from holes, breaks, loose or rotting boards or timbers and any other conditions which might admit rain or dampness to the walls." Additionally, in 2021, the City of Chicago filed a lawsuit related to these building code violations.

20. In Request for Production no. 4, General Star requested any and all communications between Portage Theater and Bayit Builders. Bayit Builders is Portage

Theater's general contractor, who supervises all work done at the property, is the party who communicated with General Star's adjuster regarding the claims, and is the party who claims to have placed tarps on the roof after the windstorm (which General Star denies).

21. Portage responded that it would produce only documents that relate to the roof and interior damages claim as caused by the Derecho; however, the Request is not so limited.

22. In Request no. 10, General Star sought any and all documents or communications related to any and all building code violations issued at the insured premises from 2018 to the present. In Request no. 14, Portage Theater requested any and all documents or communications related to any lawsuits filed with respect to the Portage Theater from 2018 to the present, including, but not limited to, an action filed by the City of Chicago in the First Municipal District for book County, case no. 2021 M1400464.

23. Portage refused to produce any documents in response to these production requests, claiming that the request was not relevant to the claims or defenses in this action.

24. In Request no. 12, General Star sought any and all proposals, estimates, invoices, reports, bills or receipts for work performed or proposed at the Insured premises from 2018 to the present.

25. Despite the fact that the building code violations and lawsuit against Portage concern an alleged failure to maintain the exterior walls of the building so as to admit rain or dampness to the walls, Portage Theater has refused to produce any documents in response to these production requests, claiming a lack of relevance.

26. General Star submits that documents and communications concerning Portage's pre- and post- loss maintenance of the property, the condition of the property, and any repair or work performed on the property is plainly relevant, and discoverable by General Star.

**Request for Production No. 9**

27. General Star seeks to compel production of the documents requested in Request for Production 9, as this request seeks potentially relevant evidence regarding Portage's prior representations regarding the condition of the property, its value, and Portage's financial ability to repair the property.

28. In addition to disputing the valuation of its property, Portage also contends in its Complaint that "given Portage Theater's financial situation, Portage Theater was unable to make further temporary or permanent repairs to the roof until General Star provided payment as required by the Policy." See Complaint, para. 11. Further, based on the building code violations and lawsuit, the property condition prior to the loss is at issue.

29. In Request for Production no. 9, General Star seeks all documents or communications related to grants, tax increment financing or other potential or actual funding for the insured premises.

30. Portage Theater refused to product any documents in response to this production request.

31. General Star submits the requested discovery is plainly relevant, and discoverable by General Star.

**Requests for Production No. 6, 7 and 8**

32. General Star seeks to compel production of the documents requested in Requests for Production 6, 7 and 8, as these requests seek potentially relevant evidence regarding Portage's valuation of the property, and the amount of insurance coverage historically sought and obtained by Portage.

33. In the complaint, Portage Theater alleges that it intended to purchase an agreed value policy, and not the replacement cost policy identified in its policy application, binder and the policy itself. Additionally, Portage Theater disputes the valuation of its property.

34. In Request for Production no. 6, General Star requested any and all insurance policies issued to Portage Theater L.L.C., and/or insuring the Theater from 2018 (the date Portage Theater L.L.C. purchased the property) until the present. In Request no. 7, Portage Theater requested any and all documents related to obtaining insurance coverage for the insured premises from 2018 to the present.

35. In Request no. 8, General Star requested all communications between Portage Theater and its insurance broker, the Olson Group, related to the insured premises from 2018 to the present.

36. Portage Theater objected to these requests, and agreed only to produce the General Star Policy, and documents relating to obtaining the General Star Policy.

37. General Star submits that the requested discovery is plainly relevant to the issues in the case, and therefore is discoverable by General Star.

38. Counsel for Plaintiff and Defendant previously conferred in a good faith attempt to resolve differences regarding discovery. On January 31, 2023, the undersigned, and counsel for Portage Theater, Peter Danos, Esq. and Brian Prendergast, Esq. participated in a Zoom conference. The parties also continue to exchange correspondence regarding the discovery issues. To this point, the parties have been unable to reach an accord, due to no fault of counsel, in advance of this Court's February 21, 2023 deadline to file discovery motions.

WHEREFORE, for all of the foregoing reasons, Defendant/Counter-Plaintiff General Star respectfully requests that this Honorable Court grant its Motion to Compel and enter an order requiring Portage Theater to produce all documents responsive to Requests no. 4, 6. 7, 8, 9, 10, 12, 14 within 7 days, and for such other further relief this Court deems just and proper, including an award of attorneys' fees and costs.

Dated this 21st day of February, 2023.

By: /s/ *Michelle M. Bracke, Esq.*

Michelle M. Bracke, Esq.
LEAHY, EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603-5317
Ph: 312.368.4554
mmb@lefltd.com

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2023, I caused to be filed, electronically, the foregoing document with the Clerk of the United States District Court, Northern District of Illinois, using the CM/ECF system, which sent a Notice of Electronic Filing to the following CM/ECF Registered Participants:

Robin Letchinger, Esq.
Peter Danos, Esq.
CROKE FAIRCHILD MORGAN & BERES, LLC
180 N. LaSalle Street, Suite 2750
Chicago, Illinois 60601
rletchinger@crokefairchild.com
pdanos@crokefairchild.com

By: /s/ *Michelle M. Bracke*
Michelle M. Bracke